IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAY HOSHAK, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 06-176 |
| | ) | |
| v. | ) | Judge David S. Cercone |
| | ) | Magistrate Judge Lisa Pupo Lenihan |
| SYSCO FOOD SERVICES OF | ) | |
| PITTSBURGH, LLC, | ) | Doc. No. 34 |
| | ) | |
| Defendant. | ) | |
| | ) | |

## REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that Defendant's Motion for Summary Judgment Pursuant to Fed.R.Civ.P. 56 (Doc. No. 34) be granted.

### II. REPORT

Currently pending before the Court is Defendant's Motion for Summary Judgment as to Plaintiff's claim that Defendant, Sysco Food Services of Pittsburgh, LLC ("Sysco"), violated Pennsylvania common law by retaliating against him for exercising his rights under the Pennsylvania Workers' Compensation Act. After discovery but prior to moving for summary judgment, the parties agreed to voluntarily dismiss with prejudice Plaintiff's claim of disability discrimination under Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* Thus, the only claim remaining for adjudication is Plaintiff's common law retaliation claim based on a five-day suspension allegedly in retaliation for exercising his rights under the Pennsylvania Workers' Compensation Act ("WCA").

Defendant has moved for summary judgment on Plaintiff's retaliation claim, arguing that

Plaintiff has failed to produce sufficient evidence to establish a genuine issue of material fact regarding whether there is a causal connection between the filing of his workers' compensation claim and the five-day suspension which occurred approximately four years later, to survive summary judgment. Subsequent to Defendant's filing of the summary judgment motion and Plaintiff's response thereto, the Court raised *sua sponte* the following issue: Whether Plaintiff can maintain a retaliation claim under Pennsylvania common law where the adverse employment action is a suspension, as opposed to a wrongful discharge, and where the terms of Plaintiff's employment are governed by a collective bargaining agreement. The parties were given an opportunity to, and did file, supplemental briefs on this issue.

Because it appears that Pennsylvania does not recognize a common law retaliation claim under the circumstances presented here, the Court concludes that Plaintiff's claim of retaliation for filing a workers' compensation claim fails as a matter of law. Therefore, the Court recommends that Defendant's motion for summary judgment be granted.

### A. **Statement of Relevant Facts and Procedural History**

The relevant facts are not disputed. Since 1997, Plaintiff, Jay Hoshak, has been employed as a warehouse laborer by Sysco, which is engaged in the business of the retail sale and transport of food. As an employee of Sysco, Plaintiff is a member of the bargaining unit represented by UFCW, Local 23, and is covered under the current Labor Agreement.

On or about July 9, 2001, Hoshak allegedly sustained a work-related injury to his back. He filed a workers' compensation claim relating to his back injury and has sought medical treatment for this injury from approximately July 2001 until at least February 2007. (Ex. 40 & 41 (Doc. Nos.

49-50) in support of Pl.'s Response to Mot. for Summ. J.)[1]

On September 1, 2005, Sysco Vice President of Employee Relations, Diane Reimer, informed Hoshak in a letter that he was being suspended without pay for five days for an incident that occurred on August 29, 2005, wherein he was allegedly discourteous and disrespectful to the President and CEO of Sysco Food Services of Pittsburgh, Joel TePastte.[2] (Ex. 43 to Hosak Dep. Vol. II.) The events leading up to Plaintiff's suspension are summarized as follows.

On August 23, 2005, Hoshak left his assigned work area during working hours without informing his supervisor and getting permission to do so. This incident arose as a result of a request Plaintiff made for a leave of absence to attend a court hearing scheduled for August 25, 2005 concerning his daughter. At Ms. Reimer's direction, Hoshak submitted a handwritten letter dated August 9, 2005, requesting that he be permitted to take several days of leave without pay in connection with a "major family problem concerning his nine-year old daughter."[3] (Ex. 6, Pl.'s App. in Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s App.").) When his request was denied, Hoshak set up an appointment to discuss the matter with Mr. TePastte. (Hoshak Dep. Vol. II, at 104; TePastte Dep. at 32-33.) During this meeting, Hoshak explained the situation concerning his daughter to Mr.

---

1. It is unclear from the record whether the medical treatment received after December 15, 2003 was paid for by Defendant's workers' compensation insurance. Defendant cites to Exhibit 15 to J. Hoshak Dep. Vol. I (at App. Tab 3) in support of its contention that the last medical treatment received by Hoshak under his workers' compensation claim was December 15, 2003, but the Court could not locate that exhibit in any of the materials filed in this case (either sealed or unsealed). In any event, the Court finds that this issue is not material to resolution of Defendant's motion.

2. Plaintiff denies that he was conduct was disrespectful and discourteous. (Hoshak Dep., Vol. II., at 170-71.)

3. It was necessary for Plaintiff to request a leave of absence because he was not entitled to leave under the Family Medical Leave Act, and he had used all of his vacation days. (Hoshak Dep. Vol. II, at 113; Ex. 6, Pl.'s App.)

3

TePastte. (Hoshak Dep. Vol. II, at 104.) Hoshak testified that he told Mr. TePastte:

> A. And I'm going to need some time off and I'm having a hard time getting time off, and I don't think I should be. I'm, like, I can understand if you can't give it to me for whatever reason, I – it's a pretty serious deal, but if you can't give it to me, then maybe I can call Houston and they can okay it since it's something serious like this.
>
> . . .
>
> Q. What do you recall him saying to you?
>
> A. His pretty sure exact words looking straight in the eye and pointed at me, he said, don't you threaten me. Exact words.

(*Id.*) Hoshak further testified that he did not believe that Mr. TePastte said anything at that meeting about whether his request would be approved. (*Id.*) Subsequent to this meeting, Hoshak placed a call to Sysco's corporate office in Houston and left a message, but his call was not returned. (*Id.* at 182.)

On August 23, 2005, Hoshak learned that Mr. Green, Mr. TePastte's supervisor, was present at the Harmony facility, and went to the lobby area of the office in search of Mr. Green to talk to him about the situation with his daughter and request for leave. (*Id.* at 59-64.) Hoshak ran into the night warehouse supervisor, Becky DeRiggi, in the lobby and told her he wanted to go to the office (located upstairs from the lobby) to see if he could talk to Mr. Green. Ms. DeRiggi allegedly gave him permission to do so, and he was accompanied upstairs by another employee who had access to the office. (*Id.* at 60-61.) While in the office area, Hoshak waited to talk with Tom Ricobelli, an upper-level manager, who Hoshak believed might know the location of Mr. Green. (*Id.* at 61-62.) However, Mr. Ricobelli did not know the location of Mr. Green; Hoshak did not get to speak to Mr. Green that day or at any time thereafter. (*Id.* at 63, 66.) When Hoshak returned to the warehouse,

4

Judd Simon and Tom Fettig were waiting for him and asked him where he had been. (*Id.* at 64.) After explaining where he had gone, Hoshak was allegedly told by Simon and Fettig that he could not just leave the floor/warehouse without permission. (*Id.*) According to Hoshak, he was taken to task for *informing* Ms. DeRiggi where he was going rather than *asking her permission* to go to the office. (*Id.* at 65.)[4] Consequently, Hoshak received a written warning from Simon on September 6, 2005 for failing to get permission from his supervisor for leaving his assigned work area during work hours on August 23, 2005, which is a violation of work rule #13. (Ex. 39, Hoshak Dep.)

Prior to the start of his evening shift on August 29, 2005, Hoshak attended a meeting held by the President and CEO of Sysco, Joel TePastte, to provide an update on the company to its employees. (Hoshak Dep., Vol II. at 166-67.) During the meeting, Hoshak attempted to ask a question, by raising his hand for approximately five to ten minutes. (*Id.* at 167.) When Mr. TePastte eventually acknowledged Hoshak towards the end of the meeting, Hoshak initially asked him about whether an event that had been held in the past was going to be held that year. Hoshak then asked Mr. TePastte if he had an open-door policy, to which Mr. TePastte allegedly replied "yes." (*Id.* at 168.) Hoshak further testified:

> A. I asked him if you have an open-door policy, and he said yeah. I said why I came to you asking about my daughter, I'm like, I'll be glad to tell everybody in this room what happened to my daughter. And he didn't want to help me.

---

4. From Plaintiff's accounting of what transpired on August 23, 2005, it appears that Plaintiff left the warehouse floor during his shift to see if he could find Mike Green, without informing or asking the permission of the warehouse manager, Judd Simon, or Tom Fettig, and therefore, they were not aware that Plaintiff had left the warehouse until he was later observed in the lobby area. Plaintiff's request to Ms. DeRiggi when he encountered her in the lobby involved permission to go to the office, not permission to leave his assigned work area.

5

> Q. That's what you asked him?
>
> A. Yes.
>
> Q. Did he respond to that?
>
> A. He said, I believe he said this isn't the time or the place. And I said, well, everybody's here, I mean, when is the time and the place? I'm like, I'll tell my story in front of everybody.

(*Id.* at 168-69.) At that point, the meeting was concluded. Another employee, Tom Wolfe, was present at the August 29th meeting. (Wolfe Dep. at 8.) Mr. Wolfe testified that he did not think that Hoshak's conduct at the meeting was inappropriate or disrespectful to Mr. TePastte, or that his conduct warranted a five-day suspension. (*Id.* at 9, 15.) Another employee, Donald Eozzo, was also present at the August 29th meeting, but initially, did not recall discussing with Hoshak the appropriateness of his suspension. (Eozzo Dep. at 18-19, 26.) When questioned further as to whether he ever shared any opinion with Hoshak such as he did not deserve the suspension or that it was unfair, Eozzo indicated that he probably said that, and then clarified that he probably said "well, I'm sure that you'll be back." (*Id.* at 26.)

As a result of his suspension, Hoshak filed a timely charge of discrimination against Sysco with the Equal Employment Opportunity Commission (which was cross-filed with the Pennsylvania Human Relations Commission).[5] In the charge filed with the EEOC, Plaintiff alleged he was

---

5. Plaintiff also appears to have filed a grievance with the union over his five-day suspension. (Hoshak handwritten letter to P. Brofe, Union Local 23, dated Dec. 7, 2006 (Pl.'s App., Ex. 2, Part IV (Doc. No. 45-6 at 9)).) After Plaintiff retained current counsel, an appeal was filed with the union challenging an "erroneous deal" Local 23 allegedly made with Sysco without Plaintiff's or his counsel's approval. (*Id.*; Facsimile from N. Sanders dated Dec. 8, 2006 (Pl.'s App., Ex. 2, Part IV (Doc. No. 45-6 at 11)).) The grievance was subsequently withdrawn so that Plaintiff could pursue the matter with the EEOC, PHRC and eventually, in federal court. (Hoshak Dec. 7, 2006 letter to Brofe, *supra*; Facsimile from N. Sanders dated Dec. 14, 2006

discriminated against because of a claimed disability in violation of the ADA and PHRA, as well as a violation of Pennsylvania common law for retaliation for filing a workers compensation claim. The EEOC issued a final determination letter on November 23, 2005. Hoshak then instituted the instant litigation on February 10, 2006 raising two claims: Count I - Disparate Treatment under Title I of the ADA; and Count II - Retaliation for Filing a Workers' Compensation Claim under Pennsylvania common law. In response, Sysco filed a motion to dismiss the complaint for failure to state a claim upon which relief may be granted under Fed.R.Civ.P. 12(b)(6), which was denied. Subsequently, Hoshak amended his complaint to add a claim of disability discrimination under the PHRA. Discovery has been completed, and thereafter, Plaintiff moved to voluntarily withdraw and thereby abandon his claim of disability discrimination under the ADA. Sysco has now moved for summary judgment on the only remaining claim–retaliation for filing a workers compensation claim under Pennsylvania common law, and said motion has been fully briefed and responded to and is now ripe for disposition.

### B. Standard of Review - Motion for Summary Judgment

Summary judgment is appropriate if, drawing all inferences in favor of the nonmoving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*,

---

(Pl.'s App., Ex. 2, Part IV (Doc. No. 45-6 at 10)).)

477 U.S. 317, 322 (1986).

More specifically, the moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the nonmoving party must set forth "specific facts showing that there is a *genuine issue for trial*" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis added by *Matsushita* Court). An issue is genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

C. **Analysis**

Sysco submits that it is entitled to judgment in its favor as a matter of law on Hoshak's claim of retaliation for exercising his rights under the Pennsylvania Workers' Compensation Act on the basis that Hoshak has failed to adduce sufficient evidence to establish an issue of fact regarding the causal relationship prong of the three-part test for retaliation, *i.e.,* that there is a causal connection between the filing of his workers' compensation claim and the adverse employment action which occurred approximately four years after the filing of the workers' compensation claim. Hoshak argues in opposition that he has produced sufficient evidence of a pattern of antagonism to raise a triable issue of fact on the causation element.

As a preliminary matter, the Court has questioned whether a cognizable claim for retaliation exists under Pennsylvania common law where the adverse employment action is a suspension, as opposed to a wrongful discharge, and where the terms of Plaintiff's employment are governed by

8

a collective bargaining agreement.[6] Where, as here, the state's highest court has not issued a definitive ruling on a particular issue of law, the federal court must predict how that state court would rule if faced with the issue. *Covington v. Cont'l Gen. Tire, Inc.,* 381 F.3d 216, 218 (3d Cir. 2004) (citing *Packard v. Provident Nat. Bank*, 994 F.2d 1039, 1046 (3d Cir.1993)). In *Covington,* the Court of Appeals further explained:

> "In carrying out that task, [the federal court] must consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand." The decision of an intermediate state court is particularly relevant and "is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise."

*Id.* (quoting *Packard,* 994 F.2d at 1046; *C.I.R. v. Bosch's Estate*, 387 U.S. 456, 465, (1967)).

In *Shick v. Shirey Lumber,* 552 Pa. 590, 716 A.2d 1231 (1998), the Pennsylvania Supreme Court held that a cause of action exists under Pennsylvania law for *wrongful discharge* of an employee in retaliation for filing a claim for workers' compensation benefits. *Id.* at 604, 716 A.2d at 1238 (emphasis added). In so holding, the Pennsylvania Supreme Court recognized a public policy exception to the "at-will" doctrine, which generally gives an employer the ability to "discharge an employee with or without cause, at pleasure, unless restrained by some contract," or unless contrary to statutory law. *Id.* at 595, 716 A.2d at 1233 (quoting *Henry v. Pittsburg & Lake Erie R.R. Co.,* 139 Pa. 280, 297, 21 A. 157 (1891); and citing *Geary v. U.S. Steel Corp.,* 456 Pa. 171, 175, 319 A.2d 174, 176 (1974)). In carving out an exception for wrongful discharge in violation of

---

6. Neither party originally addressed this issue in their briefs; however, the Court ordered supplemental briefing on this issue, and both parties have filed a supplemental brief.

public policy, the Pennsylvania Supreme Court sought "to protect 'corporate personnel in the areas of employment not covered by labor agreements,' providing a remedy to those with no other recourse." *Ferrell v. Harvard Indus., Inc.,* No. Civ.A. 00-2707, 2001 WL 1301461, * 9 (E.D.Pa. Oct. 23, 2001) (quoting *Phillips v. Babcock & Wilcox,* 349 Pa.Super. 351, 354, 503 A.2d 36 (1986) (citing *Geary,* 456 Pa. at 181, 319 A.2d 174)).

The public policy at issue in *Shick* involved the statutory right to receive workers' compensation benefits for work-related injuries. The Pennsylvania Supreme Court noted that the WCA provides the exclusive means for obtaining compensation for work-related injuries, thereby eliminating common law tort actions for negligence between employers and employees. *Shick,* 552 Pa. at 603, 716 A.2d at 1237 (citing *Kachinski v. Workmen's Comp. Appeal Bd.,* 516 Pa. 240, 532 A.2d 374) (1987); *Tsarnas v. Jones & Laughlin Steel Corp.,* 488 Pa. 513, 412 A.2d 1094 (1980)). The court concluded that the compromise fashioned by the Legislature in enacting the WCA–employees receiving immediate set benefits instead of potentially greater benefits resulting from a successful tort action, and employers being protected from exorbitant unexpected costs from employee lawsuits–would be disrupted if an employer could terminate an employee for filing a workers' compensation claim. *Id.* (citing *Kachinski*, 516 Pa. at 247, 532 A.2d at 377). Applying the analysis of the Supreme Court of Indiana in *Frampton v. Central Indiana Gas Co.,* the *Shick* court opined:

> [I]n order for the goals of the Act to be realized and for public policy to be effectuated, the employee must be able to exercise his right in an unfettered fashion without being subject to reprisal. If employers are permitted to penalize employees for filing workmen's compensation claims, a most important public policy will be undermined. The fear of being discharged would have a deleterious effect on the exercise of a statutory right. Employees will not file claims for justly deserved compensation–opting, instead, to continue

> their employment without incident. The end result, of course, is that the employer is effectively relieved of his obligation.

*Id.* at 604, 716 A.2d at 1237 (quoting *Frampton v. Central Indiana Gas Co.,* 260 Ind. 249, 251-52, 297 N.E.2d 425, 427 (1973)).

In *Krushinski v. Roadway Exp., Inc.*, 627 F.Supp. 934 (M.D.Pa. 1985), a case decided prior to *Shick,* Judge Nealon from our sister court in the Middle District, closely examined the common law retaliation claim under Pennsylvania law, noting as its genesis, *Geary v. United States Steel Corp.,* 456 Pa. 171, 319 A.2d 174 (1974). In *Geary,* the Pennsylvania Supreme Court first recognized that a common law claim for wrongful discharge may lie when the termination of the employment relationship results in a violation of a clear public policy mandate.[7] *Krushinski,* 627 F. Supp. at 937 (citing *Geary,* 456 Pa. at 184, 319 A.2d at 184-85). The district court in *Krushinski* further noted:

> The cases which have established a tort or contract remedy for employees discharged for reasons violative of public policy have relied upon the fact that in the context of their case the employee was otherwise without remedy and that permitting the discharge to go unredressed would leave a valuable social policy to go unvindicated.
>
> It is clear that the whole rationale undergirding the public policy exception is the vindication or protection of certain strong policies of the community. If these policies or goals are preserved by other remedies, then the public policy is sufficiently served. Therefore, application of the public policy exception requires two factors: (1) that the discharge violate some well established public policy; and (2) that there be no remedy to protect the interest of the aggrieved

---

7. *Geary* involved the wrongful discharge of an at-will employee in retaliation for informing his supervisor that a product manufactured by the employer was dangerous and defective, which product was subsequently withdrawn from the market based on the employee's comments. The *Geary* court ultimately dismissed the action because it concluded that based on the facts presented, there had been no violation of a clear public policy. 456 Pa. at 184, 319 A.2d at 184-85.

11

employee or society.

*Id.* at 937 (citing *Wehr v. Burroughs Corp.,* 438 F. Supp. 1052, 1054-55 (E.D.Pa. 1977)). Applying this test to the case before it, the *Krushinski* court concluded that although an employee's discharge based upon his religious beliefs would violate public policy, the plaintiff failed to show that there was no other remedy available to vindicate the protected interest. Specifically, the court found the PHRA provided both a right (*i.e.,* to be free from religious discrimination) and a remedy to safeguard those rights. *Id.* at 937-38 (citing *Wehr,* 438 F. Supp. at 1055). Thus, the *Krushinski* court refused to create a common law remedy in those circumstances. *Id.* at 938.

In the case at bar, it does not appear that the holding in *Shick* supports Plaintiff's common law retaliation claim. *Shick* involved a wrongful discharge, while the present case involves a five-day suspension, over which Plaintiff initially filed a grievance but subsequently withdrew to pursue the matter with the EEOC, PHRC and ultimately, in federal court. Although a suspension is clearly an adverse employment action for purposes of Title VII, the ADA and the PHRA, the retaliation claim in the instant matter is not brought pursuant to any of those statutes, but rather, is brought under Pennsylvania common law. *See Farrell,* 2001 WL 1301461, at * 10 n. 8 (citing *Saylor v. Ridge,* 989 F. Supp. 680, 689 (E.D.Pa. 1998) (distinguishing between common law claim for wrongful discharge and *prima facie* retaliation claim under Title VII, which does not require such "ultimate employment action."). This Court has not found, and the parties have not cited to, any Pennsylvania appellate cases recognizing a common law cause of action for retaliation based upon anything but wrongful discharge. Indeed, in *Ferrell,* the district court found that a layoff, even if wrongful, did not constitute a permanent discharge, and therefore, refused to allow plaintiff's

common law wrongful discharge claim based on alleged retaliation for filing an OSHA complaint.[8] 2001 WL 1301461, at * 10 (citing *Ross v. Montour R.R. Co.,* 357 Pa.Super. 376, 383, 516 A.2d 29 (1986)). In *Ferrell,* the plaintiff was laid off for approximately seven months and recalled without loss of seniority or a change in his rate of pay. *Id.*

Moreover, the policy concerns that accompany a wrongful discharge are not implicated by a suspension. In adopting the public policy exception, the *Shick* court specifically noted the deleterious effect on the exercise of the right to file a workers' compensation claim caused by the fear of *discharge*. However, a five-day suspension is a less severe disciplinary action than a discharge, and in this Court's opinion, fear of a *suspension* is unlikely to cause the same deleterious effect on the exercise of Plaintiff's statutory right. With a suspension, the employee remains on the job, and the employee and employer must continue to interact. There is no evidence in this record that Plaintiff refrained from exercising statutory rights after his suspension because he feared similar disciplinary action in the future if he pursued such claims. In addition, where, as here, the employee is covered by a collective bargaining agreement, he could not be suspended or discharged without his employer following the procedure established in the agreement. Indeed, Plaintiff testified that he was terminated in 2000 (a year prior to his work-related injury) for an incident that occurred at work, but he was later reinstated with back pay after the grievance procedure determined that his termination was too severe of a disciplinary action under the circumstances. (Hoshak Dep., Vol. I at 17-20.) Therefore, where, as here, Plaintiff is aware of the grievance procedures and is in fact covered by a collective bargaining agreement which provides a remedy to protect his interests,

---

8. Unlike the present case, the plaintiff in *Ferrell* also filed a retaliation claim under Title VII and the PHRA.

there can be no reasonable fear of discharge or other less severe disciplinary action in retaliation for filing a workers' compensation claim. Thus, the Court predicts that the Pennsylvania Supreme Court would not recognize a common law remedy for alleged retaliatory suspensions under these circumstances. *Krushinski,* 627 F. Supp. at 937; *see also Geary, supra*.

Even if a common law retaliation claim could be maintained for an adverse employment action other than discharge in response to the filing of a claim for workers' compensation benefits, the existence of a collective bargaining agreement appears to preclude such claim. *See Phillips v. Babcock & Wilcox,* 349 Pa.Super. 351, 355, 503 A.2d 36, 38 (1986) (holding that an employee could not maintain a wrongful discharge claim for retaliation based on the filing of a workers' compensation claim where the employment relationship was not at-will, *i.e.,* covered by a collective bargaining agreement); *Krushinski,* 627 F. Supp. at 938 (holding the narrow public policy exception created by the *Geary* court is limited to at-will employees, and since plaintiff was not an at-will employee and had other remedies available to him, he could not maintain a common law wrongful discharge claim (citing *Harrison v. Fred S. James, P.A., Inc.,* 558 F.Supp. 438, 444 (E.D.Pa. 1983); *Smith v. Greyhound Lines, Inc.,* 614 F.Supp. 558 (W.D.Pa. 1984)); *Lohman v. Borough,* Civ.A.No. 3:05-CV-1423, 2007 WL 4260943, * 14-15 (M.D.Pa. Nov. 29, 2007) (holding police officer who was covered by CBA that provided he could not be discharged, suspended of demoted except for just cause was not an at-will employee, and thus, could not maintain a cause of action for wrongful discharge (citing *Phillips, supra*)).

In *Phillips,* the Pennsylvania Superior Court looked to the Pennsylvania Supreme Court's intent in *Geary* in carving out an exception to the at-will doctrine, and noted that the supreme court was concerned with situations in the corporate setting where unorganized employees had no other

14

recourse against wrongful discharge. 349 Pa.Super. at 354, 503 A.2d at 37 (citing *Geary*, 456 Pa. at 181, 319 A.2d at 179). Because a collective bargaining agreement provided protection against suspension or discharge without proper cause, and if the employee could show his discharge was in retaliation for filing a workers' compensation claim, his discharge would be without proper cause and he would be entitled to the remedies in the CBA, the *Phillips* court concluded plaintiff could not maintain a tort action for wrongful discharge. *Id.*

In the present action, the record shows that Hoshak was covered by a CBA which provided a grievance procedure for suspensions and terminations. Indeed, Hoshak filed numerous grievances over the course of his employment, including one for his termination in 2000, and one for the suspension at issue. Plaintiff was reinstated with back pay as a result of the grievance over his termination in 2000. Under these circumstances, the Court finds that Hoshak falls squarely within the *Phillips* holding. Accordingly, because Plaintiff is covered by a collective bargaining agreement, he cannot maintain a common law retaliation claim for filing a workers' compensation claim.

### III. CONCLUSION

There does not appear to be any cognizable action at common law in Pennsylvania for retaliation consisting of something less than a wrongful discharge or where the employee is covered by a collective bargaining agreement.[9] Therefore, it is recommended that the Motion for Summary Judgment (Doc. No. 34) filed by Defendant Sysco Food Services of Pittsburgh, LLC, be granted.

In accordance with the Magistrates Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule

---

9. In light of this conclusion, it is not necessary to reach the question of whether Plaintiff has failed to produce sufficient evidence to establish a genuine issue of material fact regarding whether there is a causal connection between the filing of his workers' compensation claim and the five-day suspension which occurred approximately four years later, to survive summary judgment.

15

72.1.4(B) of the Local Rules for Magistrate Judges, the parties are allowed ten (10) days from the date of service to file objections to this report and recommendation. Any party opposing the objections shall have ten (10) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

Dated: July 3, 2008                     By the Court:

                                        _____
                                        LISA PUPO LENIHAN
                                        United States Magistrate Judge


cc:     Honorable David S. Cercone
        United States District Judge

        All Counsel of Record
        *Via Electronic Mail*